## Pierce v. Bringardner Lumber Co., Inc.

Oct. 24, 1939.

Charles Johnson for appellant.
James H. Jeffries for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Charles W. Pierce is appealing from a judgment for the Bringardner Lumber Company, a corporation, entered pursuant to the verdict of a jury in an action wherein he sought to recover of appellee $446.27 alleged to be due him for coal mined for appellee under contract and the further sum of $434.21, the profit he would have received under his contract with appellee, if he had not been prevented by it from mining coal as therein provided.

The only ground recited and on which appellant

relies for reversal is that the court erred in not giving proper instructions on loss of wages or earning power during the period the contract was treated as being in effect by appellant.

Appellee owned a coal mine near its plant in Bell county which had been opened up and from which coal was being taken for use in its locomotives on its local railroad and for domestic purposes at its saw mill camp. On May 6, 1932, it leased this mine to appellant for an indefinite time, agreeing to furnish and deliver to appellant certain appliances and equipment necessary to the operation of the mine and to erect and keep in repair a tipple and bins for storage of coal, the bins to be in two compartments, so one compartment could be filled, the coal measured for the purpose of ascertaining the weight, and removed while the other was being filled. The weight of coal was to be ascertained by calculating same from the cubic content of the coal bins according to the method used by miners and mining engineers. Appellee agreed to pay appellant $1 per ton for mine run coal which the latter mined and delivered into the coal bins and necessary to be used by appellee for its locomotives and for other purposes at its saw mill camp, but it was not bound to pay for or remove coal from the bins unless necessary to carry on its business.

Appellant agreed to regularly mine and transport coal to the bins and to place therein all coal appellee desired or needed for use as above indicated. It was provided that the contract remain in force as long as was mutually agreed by both parties but that if either party should break or violate any of its provisions, the other party might thereupon give 30 days' notice in writing and terminate the contract; that the contract might be terminated by either party without cause by giving 30 days' notice of the intention so to do and at which time appellant would surrender and turn back to appellee the mine and all of its premises. There are other provisions in the contract but the foregoing is the substance of the portion pertinent to the case.

Under this contract appellant mined coal which was delivered to appellee up until June, 1934, and was paid for the tonnage mined as computed by the cubic content of the bins. Appellant claims that he mined more coal than was shown by that method and that under the agreement there was an adjustment of the matter and a

method of computing weight adopted which showed that he had mined more coal than was shown by the method of computation provided in the contract.

Appellant alleged in substance in his petition that appellee breached the contract and stopped him from mining coal on June 4, 1934, but gave him no written notice as provided in the contract until November 15, 1934; that in the interim he was unable to secure employment except for a short time in which he earned a small sum; that if he had been permitted to go on with his work under the contract until November 15, 1934, his earnings less the small amount he received from other employment would have been $434.21. He testified that he ceased mining coal on June 4, 1934, when A. T. Crockett, acting for appellee, insisted that he should load coal for so much by the bin instead of by the ton and said that if he would not load it that way appellee would get someone else to load it and he thereupon quit.

Crockett's version of the matter was that appellant failed to get enough coal to supply appellee's needs; that he saw appellant a number of times about the matter but the latter seemed dissatisfied about the price; that it was increased to $1.35 per ton; that appellant still seemed to be dissatisfied and finally he said to appellant, "If you can't get this coal out and do not want to, quit," and the latter replied, "I've already quit."

It appears that appellee rented appellant a house and a small plot of ground while he was engaged in the mining operation and the notice of November 15, 1934, referred to in the pleading, was a notice to surrender possession of that house and the premises.

Without going into detail concerning the evidence the foregoing will disclose that both parties treated the contract as terminated after June 4, 1934, and appellant, without insisting on his right to or attempting to further proceed under the contract, voluntarily quit. This amounted to a waiver of the provisions of the contract respecting written notice, hence appellant was not entitled to recover for coal he might have mined if he had continued to operate and the court did not err in refusing to give an instruction authorizing a recovery on that item of his pleading because it was not supported by evidence.

The instruction given by the court authorized a find-

ing for appellant for the amount of coal, if any, the jury might believe from the evidence he mined under the written contract and supplementary oral contracts for which he had not been paid by appellee. While there is some conflict in the proof on that point, there is evidence of a positive and probative character that appellant was paid for all coal mined under the contract, and the jury under proper instruction having so found, their verdict should not be disturbed.

Judgment affirmed.